# United States Court of Appeals
## For the First Circuit

No. 06-1960

UNITED STATES,

Appellant,

v.

ROBERT MITTEL-CAREY,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. William G. Young, U.S. District Judge]

Before

Boudin, Chief Judge,
Cyr and Stahl, Senior Circuit Judges.

Cynthia A. Young, Assistant United States Attorney, with whom Michael J. Sullivan, United States Attorney, was on brief for appellant.
Oscar Cruz Jr., Assistant Federal Public Defender, with whom Christopher R. Goddu, Assistant Federal Public Defender, was on brief for appellee.

July 11, 2007

**STAHL, Senior Circuit Judge**. The district court issued an order suppressing statements made by the appellee, Robert Mittel-Carey, to FBI agents during a search of his home. Because we agree with the district court that a reasonable person in the appellee's situation would have believed he was in custody during the search, we affirm the suppression order.

## I. Background

"We view the facts in the light most favorable to the district court's ruling with respect to [the defendant's] motion to suppress."[1]  United States v. Kimball, 25 F.3d 1, 3 (1st Cir. 1994).

A magistrate judge issued a search warrant for Mittel-Carey's house, located in Lowell, Massachusetts, for evidence of possession and transportation of child pornography. The warrant was based on law enforcement allegations that Mittel-Carey chatted on-line with an undercover agent posing as a 14-year-old and sent

---

[1]The district court made extensive findings of fact and conclusions of law in its oral decision at the suppression hearing. After the government filed this appeal and submitted its opening brief, the district court issued a written memorandum of law elaborating upon its oral decision. The written memorandum is not at odds with the court's oral findings and conclusions in any significant way. However, the government, in its reply brief, strenuously objects to the district court's belated memorandum on the grounds that the notice of appeal divested the district court of jurisdiction to supplement its findings. We decline to reach this issue because we can affirm the district court's conclusion of custody based solely on that court's original oral factual findings. Therefore, we draw our recitation of the facts from that oral decision alone.

the agent several images over the internet containing child pornography. At 6:25 AM on January 20, 2005, eight law enforcement officers arrived at Mittel-Carey's house, which he shared with his girlfriend, to execute the search warrant. Both Mittel-Carey and his girlfriend were asleep upstairs when the agents knocked on their door. When the girlfriend answered the door, the agents explained the search warrant and entered the house to locate Mittel-Carey and conduct the search. Two agents entered the dark bedroom where Mittel-Carey was; one of them carried a flashlight and an unholstered gun. The district court determined that Mittel-Carey saw the gun "at least when [the agent] holstered it and put it back in its holster."

The agents ordered Mittel-Carey to dress and escorted him downstairs, first into the dining room and then into the living room. They told Mittel-Carey where to sit. The agents separated Mittel-Carey from his girlfriend, whom they sent upstairs, and they did not allow the two to speak to each other. Mittel-Carey's girlfriend was questioned by two agents upstairs for approximately 20 minutes. At the conclusion of her interview, the girlfriend said she was late for work and asked an agent for permission to shower and change into her work clothes. The agent granted her permission to do so. She testified that she requested permission because she felt the agents "were escorting me and that they were in charge of the situation and they were in charge of my house at

-3-

that time." When she was dressed and ready to leave for work, she asked permission to go downstairs and leave the house. Again, the agents granted the requested permission. The agents permitted Mittel-Carey to briefly speak with his girlfriend before she left, but an agent was present for the conversation.

Meanwhile, as other agents searched the house, two FBI agents remained with Mittel-Carey in his living room and began to interrogate him.[2] Prior to beginning this interrogation, the agents did not give Mittel-Carey Miranda warnings. One of the two agents, Agent Travaglia, explained to Mittel-Carey that his house was being searched based on an undercover sting operation investigating child pornography. Travaglia also told Mittel-Carey that he did not have to respond to the agents' questions, but that in his experience, "those individuals that cooperated with investigations at the outset . . . tended to fare better if a deal was to be had later on down the road." He also told Mittel-Carey that the federal sentencing guidelines contain "a provision for acceptance of responsibility which may qualify him for a reduction in sentence." In response, Mittel-Carey asked, "Should I have an attorney for this?" Traviglia replied that he "could not advise him one way or the other," but that it was "his right." He also told Mittel-Carey that "if he got an attorney, the attorney was

---

[2]The government does not contest that Mittel-Carey was interrogated.

going to tell him not to speak to the FBI." Finally, Traviglia told Mittel-Carey that "based on what [the agents] anticipated [finding] on his computer and what he had already done he was looking at a lot of jail time."

The agents interviewed Mittel-Carey for one-and-a-half to two hours. During that time, he received permission from the agents on three occasions to move from his seated position in the living room. First, he was permitted to briefly speak to his girlfriend before she left for work. An agent was present for this brief conversation. Second, he requested to use the bathroom. The agents granted this request, and accompanied him to the bathroom. An agent stood outside the bathroom with the door partially open, in order to monitor Mittel-Carey while he was going to the bathroom. Finally, the agents permitted Mittel-Carey to feed his pet rabbits on the back porch after the interview was finished. He was accompanied by agents for this task as well.

The agents left Mittel-Carey's home without placing him under formal arrest.

The district court ordered the suppression of Mittel-Carey's statements to the agents, finding that his interrogation was custodial, and therefore that Miranda warnings were required. The government timely filed this interlocutory appeal of the district court's decision.

## II. Discussion

"The district court's conclusion that a person is in custody is a mixed question of fact and law, subject to de novo review. The district court's findings of historical fact concerning the circumstances of the interrogation are reviewed for clear error." United States v. Fernandez-Ventura, 132 F.3d 844, 846 (1st Cir. 1998) (citations omitted). See also Thompson v. Keohane, 516 U.S. 99, 116 (1995) (concluding that "state-court 'in custody' determinations warrant independent review by a federal habeas court"); United States v. Young, 105 F.3d 1, 5 (1st Cir. 1997) (noting that the dual standard of review for a motion to suppress includes review of "findings of fact for clear error" and "conclusions of law de novo"; the appeals court "subject[s] the trial court's constitutional conclusions to plenary review").

The constitutional requirement of Miranda warnings is well-traveled legal ground. "[A] person questioned by law enforcement officers after being 'taken into custody or otherwise deprived of his freedom of action in any significant way' must first" receive Miranda warnings. Stansbury v. California, 511 U.S. 318, 322 (1994) (quoting Miranda v. Arizona, 384 U.S. 436, 444 (1966)).

The "ultimate inquiry" when determining whether a defendant was in custody during an interrogation "is simply whether there was a formal arrest or restraint on freedom of movement of

the degree associated with a formal arrest." Id. (quotation omitted); see also Fernandez-Ventura, 132 F.3d at 846. This inquiry is informed by considering the "totality of the circumstances," id., and asking whether in light of the circumstances of the interrogation, "a reasonable person [would] have felt he or she was not at liberty to terminate the interrogation and leave," Thompson, 516 U.S. at 112.

Though by no means an exhaustive list, this circuit has identified four factors which ought to be considered when custody is at issue, including "whether the suspect was questioned in familiar or at least neutral surroundings, the number of law enforcement officers present at the scene, the degree of physical restraint placed upon the suspect, and the duration and character of the interrogation." United States v. Masse, 816 F.2d 805, 809 (1st Cir. 1987) (quoting United States v. Streifel, 781 F.2d 953, 961 n.13 (1st Cir. 1986)).

Considering the totality of the circumstances, and these four factors in particular, we conclude that the district court was correct that Mittel-Carey was in custody at the time of his interrogation and therefore should have received Miranda warnings. The facts we find dispositive are (1) the early hour of the search and interrogation (6:25 AM); (2) the presence of eight officers in the home; (3) that the defendant was confronted with an unholstered gun in his darkened bedroom; (4) the physical control the agents

maintained over the defendant at all times; (5) the length of the interrogation (ninety minutes to two hours); and (6) the coercive statements made by the interrogating agent, which seemed designed to elicit cooperation while carefully avoiding giving the defendant Miranda warnings.

Among these facts, the element that carries the most weight is the level of physical control that the agents exercised over the defendant during the search and interrogation. Cf. United States v. Nishnianidze, 342 F.3d 6, 14 (1st Cir. 2003) (affirming a finding of non-custody where, among other things, the "agents did not make physical contact with [defendant] or restrain his movement"). Mittel-Carey was ordered to dress, go downstairs, and was told where to sit; he was physically separated from his girlfriend and not allowed to speak to her alone; and he was escorted by agents on the three occasions that he was permitted to move, including while he used the bathroom. While an interrogation in a defendant's residence, without more, certainly weighs against a finding of custody, see id., the level of physical control the agents exercised over Mittel-Carey in this case weighs heavily in the opposite direction, despite the fact that the control was exercised inside defendant's home, see e.g., Sprosty v. Buchler, 79 F.3d 635, 641 (7th Cir.), cert. denied, 519 U.S. 854 (1996) ("More important than the familiarity of the surroundings where [defendant] was being held is the degree to which the police

-8-

dominated the scene."); <u>United States</u> v. <u>Griffin</u>, 922 F.2d 1343, 1354-55 (8th Cir. 1990) ("Questioning which occurs in the suspect's own home may provide a margin of comfort, but . . . the setting of the interrogation is not so important to the inquiry as the question of police domination of that setting."); <u>see</u> <u>also</u> <u>Orozco</u> v. <u>Texas</u>, 394 U.S. 324, 326-27 (1969) (finding a custodial interrogation where defendant was questioned in his residence).

The government argues that the physical control was necessary to preserve potential evidence within the house and protect the safety of the officers. While that may be so, this justification does not answer the very different question of whether a reasonable person, awakened at 6:25 AM by law enforcement officers (one with an unholstered gun), who is interrogated for up to two hours and not permitted freedom of movement within his own home, would believe he was not at liberty to terminate the interrogation and leave. We believe that a reasonable person in Mittel-Carey's situation would conclude that he was not free to do so. If the government is correct that the agents' actions were necessary for evidence preservation and officer safety, then it could have chosen to postpone the interrogation until a non-custodial moment, or to Mirandize Mittel-Carey. Either step would have protected both the defendant's constitutional rights and the officers' legitimate law enforcement needs.

## III. Conclusion

For the foregoing reasons, we **<u>affirm</u>** the district court's suppression of the appellee's statements.