**CORRECTED OPINION**

**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
  *Plaintiff-Appellee,*

v.

WILLOUGHBY WARREN COLONNA, IV,
a/k/a maryanna,
  *Defendant-Appellant.*

No. 06-5237

Appeal from the United States District Court
for the Eastern District of Virginia, at Norfolk.
Robert G. Doumar, Senior District Judge.
(2:06-cr-00061-RGD)

Argued: September 28, 2007

Decided: December 20, 2007

Correction of Printer Error in Footnote 6: December 28, 2007

Before WILLIAMS, Chief Judge, GREGORY, Circuit Judge,
and Samuel G. WILSON, United States District Judge for the
Western District of Virginia, sitting by designation.

---

Reversed and remanded by published opinion. Judge Gregory wrote
the opinion, in which Chief Judge Williams and Judge Wilson joined.

---

**COUNSEL**

**ARGUED:** James Orlando Broccoletti, ZOBY & BROCCOLETTI,
Norfolk, Virginia, for Appellant. Michael Calvin Moore, Assistant
United States Attorney, OFFICE OF THE UNITED STATES
ATTORNEY, Norfolk, Virginia, for Appellee. **ON BRIEF:** Chuck

Rosenberg, United States Attorney, Alexandria, Virginia, for Appellee.

---

**OPINION**

GREGORY, Circuit Judge:

Willoughby Warren Colonna, IV appeals his conviction for Transporting Child Pornography in violation of 18 U.S.C. § 2252A(a)(1), Advertising the Exchange of Child Pornography in violation of 18 U.S.C. § 2251(d)(1)(A), and Possession of Material Containing Child Pornography in violation of 18 U.S.C. § 2252A(a)(5)(B). Colonna raises several errors on appeal, asserting that the district court improperly: (1) denied his motion to suppress; (2) abused its discretion in excluding relevant testimony; and (3) improperly questioned him. Having considered Colonna's claims, we conclude that the district court's denial of his motion to suppress was erroneous. For the reasons stated below, we reverse and remand the case for trial.

I.

In March 2004, while conducting an online undercover investigation, a Federal Bureau of Investigation ("FBI") agent, Kenneth Jensen ("Agent Jensen") accessed a chat group called "100%PreTeenGirl-SexPics." After gaining access to an f-server,[1] Agent Jensen observed child pornography files.[2] Within a few minutes, he uploaded four child pornography videos. FBI software allowed the agent to capture the IP address of the f-server, which was assigned to Colonna's home in Chesapeake, Virginia.

On June 24, 2004, at 6:29 a.m., Special Agent Christopher A. Kahn ("Agent Kahn") along with twenty-three FBI Task Force Officers and

---

[1]An "f-server" is a file-sharing system on a computer that allows others to access the computer via the internet and trade files. (J.A. 312-16.)

[2]The agent accessed the files by typing "!maryanna"; a trigger term referenced in the f-serve advertisement.

a computer forensic technician executed a search warrant for child pornography at Colonna's home.[3]

Colonna, his parents, and his younger sister were all present in the house. The agents awoke Colonna's parents and sister and allowed them to dress before bringing them to the living room for questioning. The parents informed the agents that Colonna was asleep in the third floor attic. The agents then went upstairs and kicked open Colonna's bedroom door. At gun point, the agents ordered Colonna to dress and come downstairs. Colonna contends as he attempted to put on his pants, an agent slammed him into a door jam causing injuries to his spine.

The agents escorted Colonna to the living area with his other family members. When Colonna's mother attempted to smoke a cigarette, an agent told her that she could not smoke in the house and would not be allowed to return if she went outside. Colonna, his mother, and his sister went outside, and agents followed them.

Agent Kahn asked to speak with Colonna in a FBI vehicle. He advised Colonna that he was not under arrest. Parked behind the house, Agent Kahn along with another agent, Beverly Borgia ("Agent Borgia"), interviewed Colonna. During the conversation, Colonna informed the officers that there were four computer towers and one laptop, all connected to the internet through a wireless router, in the home. One computer was located in his bedroom.

Initially, Colonna denied having any knowledge of child pornography on the computers but admitted to viewing and trading adult pornography over the internet. After Agent Kahn twice advised Colonna that lying to a federal agent was a felony, he admitted sharing child pornography through the f-server. Colonna informed Agent Kahn that about a year prior to the search, he created the f-server to send, receive, and store child pornography videos of underage girls.

---

[3]Agent Kahn testified that he took twenty-three agents because the house was of considerable size; three stories high, four bedrooms, and a large detached garage.

Agent Kahn then suggested Colonna write a statement for the Assistant United States Attorney investigating the crime. Colonna agreed. According to his written statement, Colonna "was under the impression that viewing other people's illegal acts would be less illegal/wrong, than trying to live out those fantasies." (J.A. 53). He also stated that no one else had access to his computer and that he took total responsibility for any material found on the computer.

Both Agents Kahn and Borgia witnessed and signed the statement. The interview lasted approximately three hours, during which Agent Kahn spoke to other agents and Colonna took several cigarette breaks. However, the agents never left Colonna unattended. Colonna never asked to leave and did not receive *Miranda* warnings.

During the search, the agents seized, among other things, the computer located in Colonna's bedroom. FBI computer forensic analysis confirmed that the file sharing software and videos were consistent with files uploaded and logged by Agent Jensen in March, 2004. One year and ten months after the search, the FBI arrested Colonna for transporting, advertising, and possessing child pornography.

Colonna filed a motion to suppress his oral and written statements. The district court denied the motion, ruling that *Miranda* warnings were not required because Colonna was not in custody. Thus, the statement along with testimony from the agents, Colonna, and his family and friends were introduced at trial.

In his defense, Colonna sought to introduce impeaching testimony from his brother, Charles Colonna ("Charles"), that a mutual friend and defense witness, switched the f-server's channels to capture videos about teens as "a joke" and that, in 2006, the same witness downloaded child pornography to a computer that he and Charles shared. The district court, however, restricted Charles's testimony on these points.

Finally, throughout the trial, the district court questioned Colonna on various issues, which Colonna now contends prejudiced him before the jury.

## II.

Colonna challenges the district court's denial of his motion to suppress. He argues that he was in custody for *Miranda* purposes during his interview with FBI agents, and because *Miranda* warnings were not given, his statements should have been suppressed.

## A.

In considering a district court's denial of a suppression motion, we review a district court's findings of fact for clear error and its legal conclusions de novo. *United States v. Uzenski*, 434 F.3d 690, 704 (4th Cir. 2006) (citing *United States v. Parker*, 262 F.3d 415, 419 (4th Cir. 2001); *see also United States v. Rusher*, 966 F.2d 868, 873 (4th Cir. 1992) (citing *United States v. Ramapuram*, 632 F.2d 1149, 1155 (4th Cir. 1980). We construe the evidence in the light most favorable to the Government, the prevailing party below. *Parker*, 262 F.3d at 419 (citing *United States v. Seidman*, 156 F.3d 542, 547 (4th Cir. 1998)).

## B.

The Fifth Amendment requires that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." *U.S. Const. amend. V*. In *Miranda v. Arizona*, 384 U.S. 436, 444 (1966), the Supreme Court adopted prophylactic procedural measures to ensure that a defendant is advised of his Fifth Amendment rights during custodial interrogations. "Absent formal arrest, *Miranda* warnings only apply 'where there has been such a restriction on a person's freedom as to render him "in custody."'" *Parker*, 262 F.3d at 419 (4th Cir. 2001) (quoting *Oregon v. Mathiason*, 429 U.S. 492, 495 (1977) (per curiam)). An individual is in custody "when, under the totality of the circumstances, 'a suspect's freedom from action is curtailed to a "degree associated with formal arrest."'" *Id.* (quoting *Berkemer v. McCarty*, 468 U.S. 420, 440 (1984)). The operative question is whether, viewed objectively, "a reasonable man in the suspect's position would have understood his situation" to be one of custody. *Berkemer*, 468 U.S. at 422.

The Government argues that Colonna was not in custody because: (1) the interrogation occurred outside of his home; (2) Colonna was

told that he was not under arrest; and (3) Colonna was not arrested until almost two years later. Colonna counters that the totality of the circumstances indicate he was "in custody" for *Miranda* purposes.

The district court found that Colonna was awakened by armed agents and guarded by agents until the search and interview concluded. The home was inundated with approximately 24 officers who gave Colonna and his family members instructions; that is, they told them where to sit and restricted their access to the home. Colonna did not voluntarily request to speak with Agent Kahn. Instead, Agent Kahn requested that Colonna accompany him to a FBI vehicle to answer questions, wherein a full-fledged interrogation took place. Agent Kahn questioned Colonna for almost three hours, albeit with breaks. But, even during these breaks, Colonna was constantly guarded. Although Colonna was not placed under formal arrest, he was told twice that lying to a federal agent was a federal offense. And, at no time was he given *Miranda* warnings or informed that he was free to leave.

The district court found that "given the totality of the circumstances, a reasonable person would have believed that his freedom was curtailed." (J.A. 297.) But, according to the district court, because Agent Kahn specifically told Colonna he was not under arrest and did not, in the end, arrest him for two years, a custodial interrogation did not take place. While we find no error in the district court's findings of fact, we do take issue with the district court treating Agent Kahn's statement to Colonna that he was not under arrest as the dispositive fact in its determination of custody.

Indeed, there is no precedent for the contention that a law enforcement officer simply stating to a suspect that he is "not under arrest" is sufficient to end the inquiry into whether the suspect was "in custody" during an interrogation. *See Davis v. Allsbrook*, 778 F.2d 168, 171-72 (4th Cir. 1985) ("Though informing a suspect that he is not under arrest is one factor frequently considered to show lack of custody, it is not a talismanic factor"). Rather, we have held that the "ultimate inquiry" looks to the totality of the circumstances to determine whether they indicate an individual's freedom of action is curtailed to a degree associated with formal arrest. *Parker*, 262 F.3d at 419; *see also California v. Beheler*, 463 U.S. 1121, 1125 (1983). Here, the dis-

trict court made two factual findings that support a custody determination: First, "even if the agents truly requested [Colonna's] voluntary participation in an interview, it is highly doubtful that a reasonable person would have felt entitled to decline their request [to talk]"; and, second, "the agents did everything short of actually, physically restraining [Colonna] to make him, or any reasonable man, believe that he was not free to leave." (J.A. 294, 297.) Given that the district court made both of these findings, it is difficult to see how it could then say that Colonna was not in custody.

Moreover, despite acknowledging clear indicia of custody, the district court allowed a single factor to "sway the analysis." (J.A. 297.) While one factor "may sway" the analysis under the totality of the circumstances test, it is clear that the circumstances of Colonna's interrogation - telling Colonna that he was not under arrest — is insufficient to preclude a finding of a custodial interrogation.

In *United States v. Uzenski*, we examined the totality of the circumstances and held that the defendant, a police officer, was not in custody for purposes of *Miranda*. 434 F.3d 690, 704 (4th Cir. 2006). Although Uzenski was explicitly told he was not under arrest, the officer's statement was only one of several factors in our calculus of determining custody — not a dispositive factor, as the Government suggests. In fact, Uzenski was also informed that he was free to leave at any time. We concluded, therefore, that Uzenski was not in custody because the totality of the circumstances demonstrated that the "*coercive pressures* that can be brought to bear upon a suspect in the context of custodial interrogation" were not present. *Id.* at 705 (quoting *Pasdon v. City of Peabody*, 417 F.3d 225, 228 (1st Cir. 2005)). Unlike *Uzenski*, here *coercive pressures* existed because Colonna's interrogation occurred in a police dominated environment where the agents did everything to make Colonna, or any reasonable man believe that he was not free to leave.

For example, the house was inundated with over twenty-three FBI agents. Colonna was awakened at gun point and guarded at all times. In Colonna's presence, an agent instructed his mother that she could not smoke in her own house and that she could not reenter the house if she chose to go outside. Agents accompanied Colonna, his mother, and his sister outside. While questioned in the FBI vehicle, Colonna

was bracketed by Agent Borgia in the backseat and Agent Kahn in the front seat, both of whom were armed. During the three hour interview, Colonna was guarded by Agent Borgia when he smoked cigarettes. *See United States v. Griffin*, 922 F.2d 1343, 1350-51 (8th Cir. 1990) ("We realize that the likely effect on a suspect of being placed under guard during questioning, or told to remain in the sight of interrogating officials, is to associate these restraints with a formal arrest."). Colonna did not initiate police questioning and was never told that he was free to leave or that he did not have to respond to questions. *See United States v. Ollie*, 442 F.3d 1135, 1138 (8th Cir. 2006) (noting that although advising someone that he or she is not under arrest mitigates an interview's custodial nature, "an explicit assertion that the person may end the encounter is stronger medicine.").

As *Uzenski* makes clear we have never abandoned the totality of the circumstances test or short stopped our analysis at the mere utterance of the phrase — "you are not under arrest." *Uzenski*, 434 F.3d at 705. To do so, would provide law enforcement officers with a complete "end run" around *Miranda*.[4] At bottom, considering the totality of the circumstances, a reasonable man in Colonna's position would have felt that his freedom was curtailed to a degree associated with formal arrest. Thus, his statements should have been suppressed.

Further, we cannot conclude that the district court's error is harmless. *See Correll v. Thompson*, 63 F.3d 1279, 1291 (4th Cir. 1995) (noting that even if admission of a confession was error, a defendant is not entitled to relief if the error was harmless). In our view, the strength of the Government's case against Colonna, absent his oral and written inculpatory statements, is questionable. In fact, the Government conceded at oral argument that admission of Colonna's oral statements would not be harmless error.[5]

---

[4]To be sure, we do not mean to suggest that advising a suspect that he is not under arrest is irrelevant to an "in custody" determination. Rather, we merely point out that it is not dispositive.

[5]Neither party briefed or addressed the issue of harmless error.

Accordingly, the judgment of the district court is reversed, Colonna's sentence is vacated, and the case is remanded for trial on the merits.[6]

*REVERSED AND REMANDED*

---

[6]Colonna also asserts that his conviction should be reversed because the district court: (1) did not allow him to introduce impeaching testimony from his brother concerning a defense witness; and (2) improperly questioned him throughout the trial, which prejudiced him before the jury. Because we vacate Colonna's conviction on other grounds, we need not reach these issues.