**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

─────────────

**No. 12-5039**

─────────────

UNITED STATES OF AMERICA,

           Plaintiff - Appellee,

    v.

FAISAL HASHIME,

           Defendant - Appellant.

─────────────

Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria. Leonie M. Brinkema, District Judge. (1:12-cr-00329-LMB-1)

─────────────

Argued: September 20, 2013      Decided: October 29, 2013

─────────────

Before WILKINSON, KING, and WYNN, Circuit Judges.

─────────────

Reversed and remanded by published opinion. Judge Wilkinson wrote the opinion, in which Judge King and Judge Wynn joined. Judge King wrote a separate concurring opinion.

─────────────

**ARGUED**: Jonathan Shapiro, Peter D. Greenspun, GREENSPUN SHAPIRO PC, Fairfax, Virginia, for Appellant. Maureen Catherine Cain, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee. **ON BRIEF**: Mikhail N. Lopez, GREENSPUN SHAPIRO PC, Fairfax, Virginia, for Appellant. Alexander T. H. Nguyen, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee.

─────────────

WILKINSON, Circuit Judge:

The day after his twentieth birthday, Faisal Hashime was convicted of multiple counts related to child pornography and later sentenced to fifteen years in prison. Hashime made numerous self-incriminating statements while being interrogated by law-enforcement agents during a search of his home. Because the agents did not read Hashime his <u>Miranda</u> rights until well into what was plainly an extended custodial interrogation, we reverse Hashime's conviction and remand for further proceedings consistent with this decision.

I.

A.

In November 2010, while monitoring a website used to exchange child pornography, a law-enforcement agent with Immigration and Customs Enforcement's Homeland Security Investigations unit (HSI) discovered a naked picture of a minor boy with the caption "Email me, t.campbell2011@gmail.com." In July 2011, the agent sent an email to the t.campbell2011@gmail.com address, asking to trade child-pornography images. The agent eventually received twenty-four explicit pictures of a naked boy. By tracing the email account's associated IP address, HSI concluded that the account was being used by someone in the Hashime family home.

2

Based on this information, law enforcement obtained and executed search warrants on both the t.campbell2011@gmail.com email account and Hashime's house. Shortly after 9:00 AM on May 18, 2012, a team of 15-30 state and federal law-enforcement agents equipped with a battering ram descended on Hashime's home. Hashime, at the time a 19-year-old community-college student, lived with his parents in suburban northern Virginia. The agents banged on the entrance, yelling "Open the door."

After being let in by Hashime's aunt, the officers streamed into the house with their guns drawn. An officer entered Hashime's bedroom and pointed a gun at him. Hashime was in bed, naked and asleep, having gone to bed at 5 AM that morning. The officer ordered Hashime to "Get up. . . . Get out of bed," and instructed Hashime to show his hands. After Hashime put on boxer shorts, the officer held Hashime by the arm, issuing orders to him, and marched him out to the front lawn, where officers were corralling the other members of his family. Despite the chilly weather, the Hashime family members were kept outside, several of them dressed only in their nightclothes.

When law enforcement eventually allowed Hashime and his family back into their house, they were kept in the living room while the officers completed their sweep of the home. Hashime was not allowed to go to the bathroom until the officers had "clear[ed] it out." Hashime was given his clothes but was not

provided with shoes or socks. Hashime's mother, who was recovering from recent brain surgery, and about whose health Hashime was concerned, asked to lie down for health reasons but was not allowed to. The Hashime family members were not permitted to be alone and were instructed that they had to be accompanied by officers at all times. The law-enforcement agents proceeded to interrogate each of them individually.

Hashime was escorted by two officers to the basement for interrogation. The basement was finished, but the officers chose to interrogate Hashime in a room that was being used as a storage area. Hashime's family was not allowed to see Hashime until the three-hour interrogation was over. Hashime's mother asked the officers three times for an attorney for Hashime, but was told that he was being questioned and that she could not see him or otherwise interrupt the interrogation. According to Hashime's mother, the officers told her that Hashime was under arrest.

The officers secretly recorded the interrogation. When Hashime asked them if they were recording it, the lead interrogator, who was not carrying the recording device, told Hashime, "I can tell you I don't have a recorder on . . . ." During the interrogation, Hashime admitted to having child pornography on his computer and told the officers in great detail about how he had obtained the photographs. Hashime also

4

gave the officers the password to his computer and told them where the child-pornography images were located on his hard drive.

At the beginning of the interview, the officers told Hashime that he did not have to answer their questions and could leave at any time. However, at one point in the interrogation, one of the officers told Hashime, "I need to know, and I need you to be completely honest with me here even if you're afraid, I don't care if you say I don't want to answer that or I'm afraid to answer it, but I need to know the truth." JA 585. In addition, when one of the interrogators left Hashime to go upstairs, he told Hashime, "[L]ike I said at the beginning, the search warrant we got to kind of keep an eye on you . . . . I can't leave you here with nobody here." JA 617-18.

The officers did not read Hashime his Miranda rights until over two hours into the interrogation.

### B.

Hashime was arrested three days after the interrogation. In July 2012 he was indicted on seven counts of production, distribution, receipt, and possession of child pornography in violation of 18 U.S.C. §§ 2251 and 2252.

Prior to trial, Hashime moved to suppress the statements he made to the law-enforcement agents during the interrogation on the grounds that he was in custody at the time and did not

5

receive the required Miranda warning at the beginning of the interrogation. The district court rejected this motion, emphasizing Hashime's demeanor and tone during his interrogation, his general familiarity with law-enforcement practices, and his apparent lack of concern with any imminent arrest. The court relied in particular on the recording of the interrogation, stating that "were it not for the tape, I think you'd [Hashime] win your case." JA 125-26. The court noted that "the voice of the defendant . . . expressed no kind of hesitation, no nervousness" and that the evidence of Hashime's "forthcoming-ness" was "powerful." JA 126. The court concluded that Hashime "was free to leave and . . . believed himself to be free to leave." JA 129.

Hashime pled guilty to the receipt and possession charges, the former of which carried a mandatory minimum of five years in prison and a maximum sentence of twenty years. The government nevertheless chose to also prosecute Hashime on the production and distribution charges.

At the bench trial, multiple minors testified about their contacts with Hashime. Together with Hashime's statements during the interrogation, this evidence established Hashime's pattern of behavior: he would pose as an attractive teenage girl named Tracy and make contact with boys on websites used for anonymous chatting or through direct email communication.

6

Hashime would offer -- in many cases successfully -- to trade nude pictures of Tracy for nude pictures of the boys. On occasion, he redistributed the pictures he obtained. The court found Hashime guilty of the production and distribution counts.

Prior to sentencing, Hashime moved to strike the mandatory-minimum sentences applicable to him on the ground that they violated the Eighth Amendment. The district court denied the motion, finding proportionality review unavailable for a sentence less than life imprisonment without the possibility of parole.

At sentencing, the district court rejected the government's request for a thirty-year sentence as "way more than would be appropriate." JA 451. The district court emphasized Hashime's youth and immaturity, and instead sentenced him to a fifteen-year sentence -- the mandatory-minimum fifteen-year sentences for the production charges, and a combination of mandatory and non-mandatory five-year sentences on the other charges, all to run concurrently -- followed by twenty years of supervised release.

## II.

Hashime first argues that his conviction should be reversed because law-enforcement agents failed to read him his Miranda rights at the beginning of the interrogation. "We review the

7

factual findings underlying a motion to suppress for clear error and the district court's legal determinations de novo. When a suppression motion has been denied, this Court reviews the evidence in the light most favorable to the government." United States v. Davis, 690 F.3d 226, 233 (4th Cir. 2012) (citations omitted).

## A.

The Fifth Amendment provides that "No person . . . shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. As a prophylactic safeguard for this constitutional guarantee, the Supreme Court has required law enforcement to inform individuals who are in custody of their Fifth Amendment rights prior to interrogation. See Miranda v. Arizona, 384 U.S. 436, 444 (1966); United States v. Parker, 262 F.3d 415, 419 (4th Cir. 2001). Without a Miranda warning, evidence obtained from the interrogation is generally inadmissible. See id.; see also United States v. Hargrove, 625 F.3d 170, 177 (4th Cir. 2010).

When deciding whether a defendant not under formal arrest was in custody -- and thus if the Miranda requirements apply -- a court asks whether, "under the totality of the circumstances, 'a suspect's freedom of action [was] curtailed to a degree associated with formal arrest.'" Parker, 262 F.3d at 419 (quoting Berkemer v. McCarty, 468 U.S. 420, 440 (1984)). This

inquiry is an objective one, and asks whether "'a reasonable man in the suspect's position would have understood his situation' to be one of custody." United States v. Colonna, 511 F.3d 431, 435 (4th Cir. 2007) (quoting Berkemer, 468 U.S. at 422). In other words, the court considers whether "a reasonable person [would] have felt he or she was not at liberty to terminate the interrogation and leave." United States v. Jamison, 509 F.3d 623, 628 (4th Cir. 2007) (alteration in original) (quoting Thompson v. Keohane, 516 U.S. 99, 112 (1995)) (internal quotation marks omitted).

Facts relevant to the custodial inquiry include, but are not limited to, "the time, place and purpose of the encounter, the words used by the officer, the officer's tone of voice and general demeanor, the presence of multiple officers, the potential display of a weapon by an officer, and whether there was any physical contact between the officer and the defendant." United States v. Day, 591 F.3d 679, 696 (4th Cir. 2010) (quoting United States v. Weaver, 282 F.3d 302, 312 (4th Cir. 2002)) (internal quotation marks omitted). Also pertinent are the suspect's isolation and separation from family, see United States v. Griffin, 7 F.3d 1512, 1519 (10th Cir. 1993), and physical restrictions, United States v. Griffin, 922 F.2d 1343, 1347 (8th Cir. 1990).

The district court ruled, and the government argues, that a Miranda warning was not required because Hashime was not in custody. There is no question that the officers interrogated Hashime and the custody question is the only one remaining.[1] The government's case rests on two grounds: law enforcement's conduct toward and statements to Hashime prior to and during the interrogation, and Hashime's tone and demeanor during the interrogation. We address each in turn.

The government argues that the law-enforcement agents' behavior establishes that the interrogation was non-custodial. The government notes that, when the Hashime family was gathered in the living room, an agent said that no one was under arrest. Furthermore, at the beginning of the interview, one of the interrogators told Hashime that "most importantly we want you to know that you don't have to talk to us;" that Hashime could "answer some questions or not answer questions;" and that he could "leave any time." JA 473. The interrogators also informed Hashime, both before and after reading him his Miranda rights, that they were not there to arrest anyone but rather to execute a search warrant, and that the ultimate decision about

---

[1] Hashime does not raise any Fourth Amendment challenges to the execution of the search warrant, and none are at issue here.

arrest would be made by the prosecutor. The government also emphasizes that the interrogators offered Hashime multiple breaks for the bathroom and coffee, all of which Hashime declined. The government notes that Hashime was not handcuffed during the interrogation, that the door to the room in which he was interrogated was open, and that Hashime was sitting in the chair closest to the door.

The government's argument is fine as far as it goes, but it wholly ignores the larger setting. First, other statements made by law enforcement undercut the government's claim that Hashime was consistently told that he could leave at any time and did not need to answer any questions. During the interrogation, one of the officers told Hashime that, with respect to his prior sexual history with minors, "I need to know, and I need you to be completely honest with me here even if you're afraid, I don't care if you say I don't want to answer that or I'm afraid to answer it, but I need to know the truth." Likewise, when the interrogator left to go upstairs, he told Hashime, "[L]ike I said at the beginning, the search warrant we got to kind of keep an eye on you . . . . I can't leave you here with nobody here."

Second, even to the extent that law enforcement told Hashime that he did not have to answer questions and was free to leave, that by itself does not make the interrogation non-custodial. Although a statement that the individual being

11

interrogated is free to leave may be "highly probative of whether, in the totality of the circumstances, a reasonable person would have reason to believe he was 'in custody,'" such a statement "is not 'talismanic' or sufficient in and of itself to show a lack of custody." United States v. Hargrove, 625 F.3d 170, 180 (4th Cir. 2010). The broader setting makes clear why a few isolated statements by law enforcement in the course of a three-hour interrogation cannot erase its custodial nature. Before the interrogation, Hashime had awoken at gunpoint to a harrowing scene: his house was occupied by a flood of armed officers who proceeded to evict him and his family and restrict their movements once let back inside. Throughout the interrogation, Hashime was isolated from his family members, with his mother's repeated requests to see him denied. It is little wonder that Hashime testified that, during the interrogation, "I didn't think I had any chance to leave. . . . I felt that I was . . . trapped and . . . had to stay where I was and do what I was told." JA 64.

We also cannot accept the argument that the home setting here rendered the interrogation non-custodial. While courts are generally less likely to characterize as custodial interrogations in familiar settings like the home, see 2 Wayne R. LaFave et al., Criminal Procedure § 6.6(e), at 738-40 (3d ed. 2007), the particular facts of Hashime's interrogation cut in

12

the other direction. A suspect "may not feel that he can successfully terminate the interrogation if he knows that he cannot empty his home of his interrogators until they have completed their search." United States v. Craighead, 539 F.3d 1073, 1083 (9th Cir. 2008). As Hashime testified during the suppression hearing, prior to being interrogated he did not feel that he could freely move through the house because the officers "had people everywhere and telling us what to do, telling me what to do, and telling me where not to go and where to go." JA 64.

This case is similar to United States v. Colonna, 511 F.3d 431 (4th Cir. 2007), where we found that an interrogation arising out of a search of the home was custodial for Miranda purposes. In Colonna, twenty-four FBI agents executed a search warrant on the defendant's home, looking for child pornography. Id. at 433. Our analysis in that case focused on many of the same factors that guide our inquiry here: the large number of armed law-enforcement agents, the suspect's isolation during his interrogation, and the suspect and his family's loss of control over their home. See id. at 436. Several of our sister circuits have found interrogations to be custodial in similar circumstances. See United States v. Cavazos, 668 F.3d 190, 194 (5th Cir. 2012); Craighead, 539 F.3d at 1089; United States v. Mittel-Carey, 493 F.3d 36, 39-40 (1st Cir. 2007).

13

The government, following the district court, also argues that Hashime's tone and demeanor during the interrogation demonstrate that it was not custodial. It is true that Hashime was cooperative with his interrogators. He admitted he possessed child pornography, explained how he had received it, provided passwords to his computer, and described where the files were located on his hard drive. Hashime told the agents that "I want to help you," and that "I love helping cops. I've always loved cops. I always wanted to be a cop." JA 540. It is also the case that the tone of the interrogation was calm and in some instances almost chatty, with Hashime asking the agents whether the investigation would affect his upcoming vacation plans and joking with them about the health hazards of smoking cigarettes.

Whatever the nature of Hashime's tone and demeanor, it is not dispositive here of the custodial inquiry. As the Supreme Court has emphasized, the test for whether an interrogation was custodial is an objective one: "[T]he subjective views harbored by either the interrogating officers or the person being questioned are irrelevant. The test, in other words, involves no consideration of the actual mindset of the particular suspect subjected to police questioning." J.D.B. v. North Carolina, 131 S. Ct. 2394, 2402 (2011) (internal quotation marks and citations omitted); see also United States v. Parker, 262 F.3d 415, 419

14

(4th Cir. 2001) ("Custody determinations do not depend on the subjective views of either the interrogating law enforcement officers or of the person being questioned, but depend instead [on] the objective circumstances of the interrogation.").

The district court gave primary emphasis to the mannerisms of the defendant, remarking that Hashime's voice expressed "no kind of hesitation, no nervousness," and that his attitude was a cooperative one. But Hashime's attitude -- his apparent "forthcoming-ness" as the district court put it -- is more of a subjective factor and goes primarily to the <u>voluntariness</u> of Hashime's confession. The voluntariness inquiry and the <u>Miranda</u> custody inquiry are, however, not one and the same. <u>See</u> <u>Yarborough v. Alvarado</u>, 541 U.S. 652, 667-78 (2004).

In contrast to Hashime's manner, the conduct of government agents is an objective factor informing the inquiry of whether a reasonable person would have felt free to leave. Thus the government properly noted such factors as the agents' tone of voice, statements that Hashime was not under arrest, and offer of multiple breaks to the defendant. While these objective factors the government offers do cut against custody, they are decidedly outweighed by other, undisputed objective considerations -- among which is the sheer length of what the government would prefer to characterize as an "interview," but which was plainly an hours-long interrogation. As Hashime

15

notes, his "house was swarming with federal and state agents, he was rousted from bed at gunpoint, held with family members and not allowed to move unless guarded, and ultimately separated from his family and placed in a small storage room with two agents where he was questioned" by investigators, Appellant's Br. at 15, who stated that he must remain under guard and that they needed "to know the truth."

We thus hold that Hashime was in custody for the purposes of <u>Miranda</u>. Consequently, law enforcement's failure to read him his <u>Miranda</u> rights makes his testimony inadmissible and requires that his conviction be reversed.[2]

### III.

Hashime also raises an Eighth Amendment proportionality challenge to his mandatory fifteen-year sentence. (Hashime's guilty plea on the receipt charge carried its own five-year mandatory minimum.) The defense emphasizes Hashime's youth and immaturity. It contends that the offense conduct triggering the mandatory fifteen-year minimum for production did not remotely resemble "the typical production of child pornography. Rather

---

[2] The government argues that, even if the district court erred in not suppressing Hashime's statements, the error was harmless. Given the seriousness and extent of Hashime's incriminating statements during the interrogation and the important role they played at trial, we disagree.

16

it was the result of the unfortunately common use of the internet by sexually curious young people." Appellant's Br. at 40. His case, he argues, was "rare": "For the year 2010, the average age of those convicted of production was 42." Id. (citing U.S. Sentencing Comm'n, Report to Congress: Federal Child Pornography Offenses 257 n.42 (2013)).

The government argues that Eighth Amendment proportionality review is not available for mandatory-minimum sentences of less than life without parole, and that any such review would neither be required by Supreme Court precedent nor compatible with our own. See, e.g., Ewing v. California, 538 U.S. 11, 30-31 (2003); United States v. Malloy, 568 F.3d 166, 180 (4th Cir. 2009). The government also contends that, even if proportionality review were available for Hashime's sentence, the mandatory minimums for his child-pornography convictions would pass constitutional muster. The government notes that even after Hashime turned eighteen, he had sexual contact with two minor boys. And irrespective of what might constitute relevant conduct under the Sentencing Guidelines, the offense conduct itself included "impersonating a young girl named 'Tracy'" in order to solicit nude photographs from minors. Appellee's Br. at 9.

The district court felt considerable unease with the mandatory minimums sought by the government in this case. At sentencing, the court chafed at the prosecutors' use of their

17

charging authority to "get into sentencing decisions," and their lack of respect for the sentencing discretion traditionally accorded district courts. JA 447. It stated that the mandatory-minimum sentences the charges required it to impose were not "fair or just," arguing further that "[t]his is the kind of case where the guidelines and mandatory minimums simply do not reflect the realities of the specific case and the specific defendant." JA 457.

Our reversal of the conviction makes it unnecessary to address any sentencing questions. It suffices to note that, in line with our own review of the custody issue and the district court's comments at sentencing, this was a case in which both police and prosecution applied a heavy foot to the accelerator. We do not doubt for an instant that the defendant's conduct here was reprehensible and worthy of both investigation and punishment, as the guilty plea attests. But attention to balance and degree often distinguishes the wise exercise of prosecutorial discretion from its opposite. For now we leave to the reflection of the appropriate authorities whether it was necessary to throw the full force of the law against this 19-year-old in a manner that would very likely render his life beyond repair.

18

IV.

For the foregoing reasons, we reverse Hashime's conviction on the production and distribution counts.  The case is remanded for further proceedings consistent with this decision.

<u>REVERSED AND REMANDED</u>

KING, Circuit Judge, concurring:

I concur fully in Judge Wilkinson's excellent opinion for the panel. I write separately, however, to draw attention to a misperception of the law of this Court with respect to whether a sentence short of life imprisonment may be reviewed to ensure that it is constitutionally proportionate to the offense of conviction, and not cruel and unusual in contravention of the Eighth Amendment. Every other court of appeals permits just that sort of proportionality review under the appropriate circumstances. So does ours, as I shall demonstrate, though the conventional wisdom may say otherwise.

After Hashime submitted his principal brief, in which he argued that his fifteen-year sentence was unconstitutionally disproportionate, he moved for initial hearing en banc. See Fed. R. App. P. 35(a). As justification for so doing, Hashime asserted that we had "held previously, as opposed to every other Circuit, that a sentence of a term of years (as opposed to a sentence of life), is not subject to the proportionality principle under the Eighth Amendment." Appellant's Motion for Hearing En Banc at 1. We denied initial hearing en banc because, as Judge Gregory (joined by Judge Davis) presaged, "if Hashime's appeal is resolved on the [threshold] Miranda issue, his Eighth Amendment argument will be moot." United States v.

20

<u>Hashime</u>, 722 F.3d 572, 572 (4th Cir. 2013) (Gregory, J., concurring in denial of hearing en banc).

And now that scenario has come to pass. <u>See</u> <u>ante</u> at 18 ("Our reversal of the conviction makes it unnecessary to address any sentencing questions."). Still, it bears revisiting Judge Gregory's observation that our Eighth Amendment precedent as it applies to defendants sentenced to a term of years "seemingly materialized from thin air," and has "inexplicably morphed" over the years. <u>Hashime</u>, 722 F.3d at 573. Our most recent published iteration of the rule occurred in <u>United States v. Malloy</u>, 568 F.3d 166 (4th Cir. 2009), where we recited that because the defendant in that case had "received less than life without parole, proportionality review is not available under our precedent." <u>Id.</u> at 180 (citing <u>United States v. Ming Hong</u>, 242 F.3d 528, 532 (4th Cir. 2001)). <u>Malloy</u> accurately characterized <u>Ming Hong</u>, in which we unabashedly asserted that "[t]his court has held that proportionality review is <u>not available</u> for any sentence less than life imprisonment without the possibility of parole." 242 F.3d at 532 (emphasis added) (citing <u>United States v. Polk</u>, 905 F.2d 54, 55 (4th Cir. 1990)).

Unfortunately, our opinion in <u>Ming Hong</u> misstated the precise language of <u>Polk</u>, in which we merely observed that the Supreme Court's decision in <u>Solem v. Helm</u>, 436 U.S. 277 (1983), "<u>does not require</u> a proportionality review of any sentence less

21

than life imprisonment without possibility of parole." 905 F.2d at 55 (emphasis added) (citation omitted). Obviously, to withhold a potential avenue of review entirely by simply declaring that it is "not available" is hardly the same thing as exercising the discretion to only infrequently engage in such review under certain circumstances. Even before Ming Hong, we neglected to capture the essence of what Solem and Polk actually instructed, as we confidently maintained that "[i]t is well-settled that proportionality review is not appropriate for any sentence less than life imprisonment without the possibility of parole." United States v. Lockhart, 58 F.3d 86, 89 (4th Cir. 1995) (emphasis added) (citing Polk). The irrefutable implication of Solem and Polk, however, is to the contrary, that is, proportionality review of a term-of-years sentence — though not required in every case, or even, perhaps, in most cases — is, contrary to Lockhart and Ming Hong, appropriate and available in some cases.

Although our recent line of authority addressing the issue has, understandably, visited ambiguity and confusion upon the bench and bar, the way going forward is clear. Where, as here, "there is an irreconcilable conflict between opinions issued by three-judge panels of this court, the first case to decide the issue is the one that must be followed, unless and until it is overruled by this court sitting en banc or by the Supreme

22

Court." McMellon v. United States, 387 F.3d 329, 334 (4th Cir. 2004) (en banc). The 1990 decision in Polk, authored by our distinguished predecessor Judge Russell, thus states the law of our circuit: where a sentence of less than life imprisonment has been imposed upon a defendant, proportionality review under the Eighth Amendment is discretionary.