**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 16-4402**

UNITED STATES OF AMERICA,

               Plaintiff - Appellee,

     v.

CHARLES JEROME WIGGINS,

               Defendant - Appellant.

Appeal from the United States District Court for the District of Maryland, at Greenbelt. George J. Hazel, District Judge. (8:14-cr-00488-GJH-1)

Submitted: August 21, 2017               Decided: September 12, 2017

Before TRAXLER, DIAZ, and FLOYD, Circuit Judges.

Affirmed by unpublished per curiam opinion.

Richard S. Stolker, UPTOWN LAW, LLC, Rockville, Maryland, for Appellant. Rod J. Rosenstein, United States Attorney, Hollis Raphael Weisman, Assistant United States Attorney, Greenbelt, Maryland, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Charles Jerome Wiggins appeals his convictions for two counts of involuntary manslaughter, in violation of 18 U.S.C. § 1112(b) (2012), and one count of reckless driving, in violation of Md. Code Ann., Transp. § 21-901.1(a) (Lexis Nexis 2009), as incorporated into federal law by 36 C.F.R. § 4.2 (2017). On appeal, Wiggins argues that the district court erred in: (1) admitting certain statements to the police, as well as blood test results seized pursuant to a search warrant; (2) certifying an expert witness in crash reconstruction because, Wiggins contends, the individual lacked sufficient qualifications in that field and his testimony was not helpful to the jury; (3) failing to *sua sponte* take action to cure any prejudice that resulted from a crying spectator; and (4) denying Wiggins' request for a continuance to locate a witness or, in the alternative, refusing to give a missing witness instruction. We affirm.

First, Wiggins argues that the district court erred in admitting statements that he made while hospitalized because he was in police custody, the statements were involuntary, and the police did not read Wiggins his *Miranda*[1] rights. Because the statements were inadmissible, Wiggins argues, so too were the blood test results that police purportedly obtained solely upon his involuntary statements.

"In reviewing a district court's ruling on a motion to suppress, this [c]ourt reviews conclusions of law de novo and underlying factual findings for clear error." *United States v. Clarke*, 842 F.3d 288, 293 (4th Cir. 2016) (brackets and internal quotation marks

___

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

2

omitted). "Because the district court denied Defendant's motion to suppress, we construe the evidence in the light most favorable to the government." *Id.* (internal quotation marks omitted).

With regard to Wiggins' contention that *Miranda* warnings were required, "law enforcement [must] inform individuals who are in custody of their Fifth Amendment rights prior to interrogation. Without a *Miranda* warning, evidence obtained from the interrogation is generally inadmissible." *United States v. Hashime*, 734 F.3d 278, 282 (4th Cir. 2013) (citations omitted). "When deciding whether a defendant not under formal arrest was in custody . . . a court asks whether, under the totality of the circumstances, a suspect's freedom of action was curtailed to a degree associated with formal arrest." *Id.* (brackets and internal quotation marks omitted). Where an individual's "'freedom of movement [is] restricted by a factor independent of police conduct' . . . 'the appropriate inquiry is whether a reasonable person would feel free to decline officers' requests or otherwise terminate the encounter.'" *United States v. Jamison*, 509 F.3d 623, 628 (4th Cir. 2007) (quoting *Florida v. Bostick*, 501 U.S. 429, 436 (1991)). We have explained that:

> Facts relevant to the custodial inquiry include, but are not limited to, the time, place and purpose of the encounter, the words used by the officer, the officer's tone of voice and general demeanor, the presence of multiple officers, the potential display of a weapon by an officer, [] whether there was any physical contact between the officer and the defendant[,] . . . the suspect's isolation and separation from family, and physical restrictions.

*Hashime*, 734 F.3d at 283 (citations and internal quotations marks omitted).

3

Here, police questioning occurred in a medical facility where Wiggins was being treated for injuries that he sustained in the car accident; United State Park Police ("USPP") Detective Michelle Ludwick questioned Wiggins with the sole intent of discovering the identity of the passengers in his vehicle, although USPP Officer Matthew Manning questioned Wiggins with the intent of discovering the cause of the accident. Wiggins was never informed that he was under arrest, he was never physically restrained or handcuffed, and police only physically touched Wiggins once, after they obtained the challenged statements, in order to comfort Wiggins when he discovered his wife died in the accident. The police never brandished a weapon. There were only two police officers in the room with Wiggins, and medical personnel continually entered and exited the room during the interview. There is no indication in the record that the police ever adopted an aggressive or authoritative tone or demeanor, and Wiggins never asked the police officers to leave or to stop questioning him. In short, almost none of the coercive factors that have previously led us to determine that an individual is "in custody" were present during Wiggins' questioning. Under these circumstances, a reasonable person in Wiggins' circumstances would have felt free to terminate the police questioning, and Wiggins therefore was not in custody for purposes of the Fifth Amendment.

With regard to Wiggins' claim that his statements were not given voluntarily, "[w]hen *Miranda* warnings are unnecessary, . . . we assess the voluntariness of a defendant's statements by asking whether the confession is 'the product of an essentially free and unconstrained choice by its maker.'" *United States v. Abu Ali*, 528 F.3d 210, 232 (4th Cir. 2008) (quoting *Culombe v. Connecticut*, 367 U.S. 568, 602 (1961)). "[I]f

4

the defendant's 'will has been overborne and his capacity for self-determination critically impaired, the use of his confession offends due process.'" *Id.* (quoting *Culombe*, 367 U.S. at 602). "In evaluating whether a defendant's will has been overborne, courts must assess the totality of the circumstances, taking into account characteristics of the accused, and details of the interrogation." *Id.*

> The factors we consider include: "the youth of the accused, his lack of education, or his low intelligence, the lack of any advice to the accused of his constitutional rights, the length of detention, the repeated and prolonged nature of the questioning, and the use of physical punishment such as the deprivation of food or sleep."

*Id.* (quoting *Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973)).

There is no indication that Wiggins is unintelligent or lacking in education, and, despite Wiggins' claim that he "was generally unresponsive, barely coherent, and obviously under the influence of injuries suffered in the collision," there is no indication that he was addled or incoherent. To the contrary, the district court determined that he was "lucid and coherent." Given the testimony presented by Manning and Ludwick, the district court's findings on that point were not clearly erroneous.

Furthermore, the length of Wiggins' questioning was relatively brief; Manning spoke with Wiggins for a mere 10 minutes before Wiggins made the damaging statements, and Ludwick questioned Wiggins for approximately 20 minutes in total after Manning obtained a blood sample. There was no use of physical punishment, nor did the police take any other coercive action to obtain Wiggins' statements. Given these facts, the mere fact that Wiggins was receiving medical treatment at the time of the questioning

5

does not render his statements involuntary.[2] *See United States v. Cristobal*, 293 F.3d 134, 141-43 (4th Cir. 2002) (statements voluntary despite medical treatment for serious injuries and treatment with narcotic painkillers where defendant was coherent and no evidence demonstrated that he was incapable of making an informed decision).

Wiggins next argues that the district court erred in permitting USPP Officer Christopher Gogarty to testify as an expert witness in accident reconstruction. Specifically, Wiggins contends that Gogarty lacked sufficient qualifications to testify as an expert, and that his testimony was not helpful to the jury.

"We review a district court's decision to qualify an expert witness, as well as the admission of such testimony, for abuse of discretion." *United States v. Garcia*, 752 F.3d 382, 390 (4th Cir. 2014). "A court abuses its discretion if its decision is guided by erroneous legal principles or rests upon a clearly erroneous factual finding." *Id.* (internal quotation marks omitted).

The Federal Rules of Evidence allow expert testimony as follows:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

---

[2] Although Wiggins argues that the warrant authorizing seizure of a blood sample was not based on probable cause, we conclude that Wiggins' own statements, combined with the testimony of officers Manning and Ludwick that they were able to smell alcohol emanating from Wiggins from a distance of several feet, provided sufficient probable cause to support the search warrant. *See United States v. Henry*, 673 F.3d 285, 290 (4th Cir. 2012) (setting forth probable cause standard).

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

Gogarty has received specialized training in accident reconstruction, including 3 40-hour training courses in accident reconstruction, a training course in pedestrian reconstruction, and a course in motor vehicle reconstruction. In these courses Gogarty learned how to calculate formulas for crash reconstruction, how to create crash diagrams, and how to calculate vehicle speeds. In addition, prior to Wiggins' crash, Gogarty held his investigatory position for 4 years and had assisted or been the primary investigator in 25 to 30 accidents. Gogarty's training and experience gave him sufficient expertise in accident reconstruction, and the district court did not abuse its discretion in qualifying him as an expert witness. *See Garcia*, 752 F.3d at 391 (finding witness qualified as expert based on 5 years of experience in the field).

Furthermore, Gogarty's testimony was helpful to the jury. He testified that Wiggins' white sedan "was straddling both the exit lane and the right lane of northbound traffic," while the truck was entirely "in the exit lane." Gogarty explained that Wiggins' sedan struck the truck from behind with sufficient force to "ride[] completely underneath that pickup truck," and ripped out the B-pillar of the sedan. The force of the accident and the speed at which the sedan was traveling caused the rear end of the sedan to pull out from the truck and flip again onto its roof before the sedan came to a stop "230 feet from

7

the area of impact." Gogarty further testified that, although he could not definitively state how fast Wiggins' sedan was traveling prior to the crash, it was traveling at "a minimum of 47 miles an hour" after the impact in a 45 mile-per-hour zone, which meant that Wiggins was traveling at a "significantly higher" rate of speed prior to the collision.

All of this information tended to indicate that Wiggins was driving in a reckless manner prior to the collision because: (1) Wiggins was straddling lanes of traffic at the time of impact; (2) he was traveling well in excess of the posted speed limit; and (3) he struck the truck from behind while the truck was traveling in the exit lane. Thus, the district court did not abuse its discretion in permitting Gogarty's testimony.

Wiggins next argues that the district court erred in failing *sua sponte* to order a mistrial or issue a curative instruction when a spectator began to cry during trial testimony. Wiggins contends that this "outburst" amounted to improper contact with the jury that infused prejudice into the case.

We ordinarily "review both a district court's denial of a motion for a mistrial and its decision regarding a curative instruction for an abuse of discretion." *United States v. Wallace*, 515 F.3d 327, 330 (4th Cir. 2008). However, where, as here, an individual fails to request a mistrial or curative instruction below, "we review the district court's decision for plain error." *United States v. Ford*, 88 F.3d 1350, 1363 (4th Cir. 1996). To establish plain error, Wiggins must "demonstrate that an error was made, the error was plain, the error affected [his] substantial rights, and [this] court should exercise its discretion to correct the error because it seriously affected the fairness, integrity, or public reputation

8

of judicial proceedings." *United States v. Chittenden*, 848 F.3d 188, 194 (4th Cir. 2017), *petition for cert. filed*, __U.S.L.W.__ (U.S. June 30, 2017) (No. 17-5100).

It is unclear that any disruption in fact occurred; while Wiggins' counsel stated that a spectator was crying "within earshot of the jury," the district court determined that the spectator was not being disruptive. Furthermore, there is no evidence that any of the jurors actually heard the crying or were impacted by it. Under these circumstances, Wiggins has not established any disruption that would warrant even a curative instruction and, consequently, no error occurred when the district court did not *sua sponte* order a mistrial or issue a curative instruction.

Finally, Wiggins contends that the district court erred in denying a continuance to allow Wiggins to locate Terry Trice, the driver of the other vehicle involved in the crash. Alternatively, Wiggins argues that the court should have, at the least, issued a missing witness instruction. "We review the denial of a motion for a continuance for abuse of discretion." *United States v. Copeland*, 707 F.3d 522, 531 (4th Cir. 2013). "Even if such an abuse of discretion is found, the defendant must show that the error specifically prejudiced his case in order to prevail." *Id.* (brackets omitted).

> When a continuance is sought to secure the attendance of a witness, the following elements must be proved by the party requesting the continuance: who the witness is, what his testimony will be, that it will be relevant under the issues in the case and competent, that the witness can probably be obtained if the continuance is granted, and that due diligence has been used to obtain his attendance for the trial as set.

*United States v. Colon*, 975 F.2d 128, 131 (4th Cir. 1992) (brackets and internal quotation marks omitted).

9

With regard to the denial of continuance, Wiggins cannot establish two of the required factors. First, USPP Detective Robert Freeman testified that he attempted to locate Trice, to no avail, and, in doing so: he "utilized every law enforcement database that [he] ha[d] access to" and spoke to several of Trice's family members, Trice's probation and parole officers, and Trice's former attorneys. Given these facts, there is no reasonable probability that Wiggins would have been able to locate Trice and secure his attendance at trial. Second, Wiggins never made a proffer as to what testimony Trice would offer. Consequently, the district court did not abuse its discretion in denying Wiggins' motion for a continuance.

With regard to Wiggins' argument that the district court erred in failing to issue a missing witness instruction, because Wiggins did not object to the district court's instructions below, any alleged error is reviewed for plain error only. *United States v. Alvarado*, 816 F.3d 242, 248 (4th Cir.), *cert. denied*, 137 S. Ct. 492 (2016). A missing witness instruction is only appropriate "if a party has it peculiarly within his or her power to produce witnesses whose testimony would elucidate the transaction." *United States v. Brook*s, 928 F.2d 1403, 1412 (4th Cir. 1991) (brackets omitted).

Wiggins argues that Trice was peculiarly within the power of the Government to call because Trice's parole officer was charged with his continuing supervision. However, a witness is not peculiarly within the power of the government to call even when that witness is in federal custody. *See United States v. Graves,* 545 F.App'x 230, 241 (4th Cir. 2013). Consequently, Trice was equally available to both Wiggins and the

Government, and Wiggins fails to show plain error. *See United States v. Garcia-Lagunas*, 835 F.3d 479, 496 (4th Cir. 2016), *cert. denied*, 137 S. Ct. 713 (2017).

Accordingly, we affirm the district court's judgment. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before this court and argument would not aid the decisional process.

*AFFIRMED*