**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

───────────

**No. 14-4650**

───────────

UNITED STATES OF AMERICA,

        Plaintiff – Appellee,

    v.

LELAND VICTOR NIELSEN, III,

        Defendant – Appellant.

───────────

Appeal from the United States District Court for the District of South Carolina, at Columbia. Terry L. Wooten, Chief District Judge. (3:13-cr-00558-TLW-1)

───────────

Argued: September 17, 2015        Decided: February 2, 2016

───────────

Before DUNCAN and DIAZ, Circuit Judges, and DAVIS, Senior Circuit Judge.

───────────

Affirmed in part, vacated in part, and remanded with instructions by unpublished opinion. Senior Judge Davis wrote the opinion, in which Judge Duncan and Judge Diaz joined.

───────────

**ARGUED:** Casper Fredric Marcinak, III, SMITH MOORE LEATHERWOOD, LLP, Greenville, South Carolina, for Appellant. James Hunter May, OFFICE OF THE UNITED STATES ATTORNEY, Columbia, South Carolina, for Appellee. **ON BRIEF:** William N. Nettles, United States Attorney, Julius N. Richardson, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Columbia, South Carolina, for Appellee.

───────────

Unpublished opinions are not binding precedent in this circuit.

DAVIS, Senior Circuit Judge:

This case arises from the conviction of Leland Victor Nielsen, III, on four counts of aggravated sexual abuse of a minor by force in violation of 18 U.S.C. § 2241(a), (c) (2012), and four counts of sexual abuse of a minor in violation of 18 U.S.C. § 2243(a) (2012), based on the same conduct. On appeal, Nielsen presents two issues for our review. First, he challenges the district court's denial of his motion to suppress statements made to federal agents. Second, he contends that his convictions are multiplicitous. For the reasons stated below, we affirm the district court's denial of Nielsen's motion to suppress but vacate his conviction and sentence on Counts 2, 4, 6, and 8 for sexual abuse of a minor as multiplicitous in violation of the Double Jeopardy Clause of the Fifth Amendment. Consequently, affirming in part and vacating in part, we remand the case for the entry of an amended judgment.

I.

A.

On May 22, 2013, the FBI received a report of potential sexual assaults occurring at the Fort Jackson Army installation in Columbia, South Carolina. Twelve-year-old B.R. had told her guidance counselor that she had been sexually assaulted by her thirty-one-year-old uncle, Leland Nielsen, III, at her family's home on Fort Jackson. Nielsen, who was married to the sister of

3

B.R.'s mother, also lived in the home. A team of FBI agents proceeded to the Fort Jackson residence to investigate the allegations.

Nielsen was not at the residence when the agents arrived, but some family members were present and gave consent for the agents to enter the house. Agent Michael Stansbury asked Nielsen's mother-in-law to call Nielsen and ask him to come home, but not to tell him the FBI was there. Nielsen's mother-in-law called Nielsen and falsely told him that he needed to come home due to a medical emergency involving his sister-in-law.

Agent Robert Waizenhofer waited in front of the house for Nielsen to arrive. When Nielsen arrived, at approximately 8:00 p.m., Agent Waizenhofer approached him as he exited his car. The two began speaking in the driveway. Agent Waizenhofer had not drawn his gun, and he was not wearing any FBI insignia. He told Nielsen that he was not in trouble and asked him about B.R.'s allegations. Nielsen began admitting to sexual acts with B.R. near the start of the interview, and Agent Waizenhofer continued to question Nielsen to elicit details. Throughout the interview, Agent Waizenhofer attempted to "empathize" with

4

Nielsen in an effort to open up conversation with him.  J.A. 48.[1]

Agent Waizenhofer was later joined by Agent Stansbury, and the agents took turns asking Nielsen questions.  At some point during the interview, Agent Stansbury became more direct or aggressive in his questioning.  It had become apparent to the agents that B.R. had performed oral sex on Nielsen but Nielsen had not expressly admitted this.  Agent Stansbury thus directly questioned Nielsen on that point, stating "she sucked your dick. Didn't she?  She sucked your dick."  J.A. 159.  At another point during the interview, the agents sought help from Agent Craig Janikowski, who was dressed in green FBI fatigues, after coming to an "impasse" with Nielsen.  J.A. 44-45, 154-55.  No more than three agents ever interviewed Nielsen at once, and one agent generally led the questioning even when others were present.

At some point during his interaction with the agents, Nielsen told them that he had post-traumatic stress disorder (PTSD) resulting from an accident at a chemical plant where he was previously employed and that he was on medication to treat the disorder.  While Nielsen ultimately admitted to engaging in various sex acts with B.R., he indicated that his PTSD was to blame for his conduct.  J.A. 42-44.

---

[1] Citations to the "J.A." are to the Joint Appendix filed by the parties in this case.

The entire interview took place in front of Nielsen's residence. Throughout the interview, there were five or six agents present at the residence. Nielsen was not handcuffed or physically restrained while agents spoke with him, and he was able to move around the yard and driveway. Agent Waizenhofer testified that, at one point, Nielsen retrieved a bottle of water from his car during the interview. J.A. 60–61. Nielsen was never told that he was free to terminate the interview and leave, and he was not provided with Miranda warnings prior to speaking with the agents. The interview lasted until approximately 11:00 p.m., when the agents placed Nielsen under formal arrest.

B.

Nielsen was indicted on four counts of aggravated sexual abuse of a minor by force under § 2241(a), (c) and four counts of sexual abuse of a minor under § 2243(a) arising from four sexual encounters between Nielsen and B.R. Nielsen filed a pretrial motion to suppress statements he made during his interview with the FBI, which the district court denied following a hearing.

The case proceeded to trial. Before the jury charge, Nielsen objected to a portion of the district court's instruction on the force element of the § 2241(a), (c) offenses. The instruction permitted the government to prove force by

6

inference based on a disparity in strength and coercive power between the offender and the victim. Nielsen argued that, under the instruction, anyone who committed sexual abuse of a minor under § 2243(a) would be inherently guilty of aggravated sexual abuse under § 2241(a), (c). The court overruled the objection and instructed the jury accordingly.

The jury returned guilty verdicts on all counts. Nielsen raised his challenge to the force instruction again in a motion for a new trial, which was denied. The court sentenced Nielsen on all eight convictions as follows: imprisonment for terms of life as to each of the four § 2241(a), (c) counts and terms of fifteen years as to each of the four § 2243(a) counts, with all such terms to run concurrently; and supervised release for concurrent terms of ten years for each count should Nielsen ever be released. The court also ordered Nielsen to pay a total of $800 in special assessment fees based on the eight counts of conviction. Nielsen timely appealed.

## II.

### A.

Nielsen contends that the district court erred in denying his motion to suppress the statements he made to federal agents as described above. He argues that his statements should have been suppressed because they occurred during a custodial interrogation without the warnings required under Miranda v.

7

<u>Arizona</u>, 384 U.S. 436 (1966), and because his statements were not voluntary.  We disagree.

We review the district court's findings of fact on a motion to suppress for clear error and its legal determinations de novo.  <u>United States v. Hashime</u>, 734 F.3d 278, 282 (4th Cir. 2013) (citation omitted).  When reviewing the denial of a motion to suppress, we view the evidence in the light most favorable to the government.  <u>Id.</u> (citation omitted).

The Fifth Amendment provides that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself."  U.S. Const. amend. V.  In <u>Miranda</u>, the Supreme Court adopted a prophylactic rule that law enforcement must warn a criminal suspect of certain rights prior to a custodial interrogation as a means of protecting this constitutional right.  <u>Miranda</u>, 384 U.S. at 444.  In general, evidence obtained from a custodial interrogation without a <u>Miranda</u> warning is inadmissible in the prosecution's case-in-chief.  <u>United States v. Parker</u>, 262 F.3d 415, 419 (4th Cir. 2001).

Absent formal arrest, <u>Miranda</u> warnings are required only "where there has been such a restriction on a person's freedom as to render him 'in custody.'"  <u>Id.</u> (quoting <u>Oregon v. Mathiason</u>, 429 U.S. 492, 495 (1977)).  "An individual is in custody for <u>Miranda</u> purposes when, under the totality of the circumstances, 'a suspect's freedom of action is curtailed to a

8

degree associated with formal arrest.'" Id. (quoting Berkemer v. McCarty, 468 U.S. 420, 440 (1984)). This inquiry is objective, looking to whether "'a reasonable man in the suspect's position would have understood his situation' to be one of custody." Hashime, 734 F.3d at 282 (citation omitted). A number of factors are relevant to this inquiry, including "the time, place and purpose of the encounter, the words used by the officer, the officer's tone of voice and general demeanor, the presence of multiple officers, the potential display of a weapon by an officer, and whether there was any physical contact between the officer and the defendant." Id. at 283 (citation omitted). We also consider an individual's isolation and separation from family, as well as any physical restrictions. Id. (citations omitted).

Considering the totality of the circumstances, the facts here do not demonstrate that Nielsen was in custody when he spoke with federal agents on May 22, 2013. Nielsen was interviewed by agents at his residence rather than at a police station or other law enforcement facility. While this fact is not determinative, we are generally less likely to regard an interview conducted in a familiar setting like a suspect's home as a custodial interrogation. See id. at 284. Five or six federal agents were present at the residence, but no more than three agents interviewed Nielsen at a time. Agent Waizenhofer,

the agent who initiated contact with Nielsen, told Nielsen that he was not in trouble and maintained an "empathetic" tone with Nielsen throughout the interview. The agents never drew their weapons at any point during the interaction. Nielsen was not handcuffed or otherwise physically restrained, and he was able to move around the yard and driveway. Additionally, Nielsen never asked to end the interview or to leave.

To be sure, some aspects of the agents' interaction with Nielsen are consistent with custody. While the interview was conducted at Nielsen's residence, Nielsen knew that agents were searching the house while others spoke with him outside. He was separated from his family. The interview lasted for three hours, ending after dark. At times, the agents' questioning became more aggressive. And while Nielsen was not under arrest and was free to terminate the interview, no one communicated either of those facts to him.

Taken together, however, the circumstances do not reflect the restriction of freedom associated with formal arrest. While several aspects of the interview favor a finding of custody, we do not fault the district court's conclusion that they are outweighed by circumstances that suggest otherwise—the small number of agents at the residence, the lack of any physical restraints on his movement and his ability to move around the yard and driveway, and, at the start at least, the generally

10

empathetic tone of the interview. Nielsen's interview was not conducted in the sort of environment that we have previously found consistent with custody. See, e.g., Hashime, 734 F.3d at 281, 283–85 (finding three-hour interview of suspect in home to be custodial interrogation when suspect was awakened at gunpoint with fifteen to thirty officers present in the residence, was not permitted to move unless guarded, and was isolated from his family and questioned in a small storage room); United States v. Colonna, 511 F.3d 431, 435–36 (4th Cir. 2007) (finding three-hour interview to be custodial interrogation when suspect was awakened at gunpoint with twenty-three officers present in the residence, was guarded at all times, and was questioned in an FBI vehicle).

It is possible that Nielsen did not feel, subjectively, that he was free to terminate the encounter. But our inquiry is objective and not based on the suspect's subjective feelings. Hashime, 734 F.3d at 285. Any interview by law enforcement with a suspect carries certain "coercive aspects" due to the heightened risk that the suspect will be arrested and charged. Hargrove, 625 F.3d at 178. We cannot conclude, however, that Nielsen was in custody simply because he was approached by law enforcement for questioning about the allegations made against him. See id.

We hold that, viewing the evidence in the light most favorable to the government, a reasonable person in Nielsen's position would not have understood his position to be one of custody.  The agents were not required to recite Nielsen's Miranda rights prior to the interview, and Nielsen's statements are thus not subject to suppression under Miranda and its progeny.

B.

Nielsen also argues that even apart from the requirements of Miranda, his statements were not voluntary.  A statement is involuntary under the Due Process Clause when it is "'extracted by . . . threats or violence' or 'obtained by . . . direct or implied promises' or 'the exertion of . . . improper influence.'"  United States v. Ayesh, 702 F.3d 162, 168 (4th Cir. 2012) (omissions in original) (quoting Hutto v. Ross, 429 U.S. 28, 30 (1976)).  The relevant inquiry is "whether the defendant's will has been overborne or his capacity for self-determination critically impaired because of coercive police conduct."  United States v. Cristobal, 293 F.3d 134, 140 (4th Cir. 2002) (citations omitted).  To make this determination, we examine the totality of the circumstances, including "the characteristics of the defendant, the setting of the interview, and the details of the interrogation."  Id. (citation omitted).  Coercive police conduct is "a necessary predicate" to a finding

12

that a suspect's statements are involuntary.  Id. (citations omitted).

To support his argument, Nielsen points to many of the same aspects of his interview with the agents that he identified as indicative of custody.  None of these factors—the sometimes aggressive questioning of the agents, the length and location of the interview, or the continuation of the interview after Nielsen had confessed to the substance of the allegations—rise to the level of coercive police conduct.  Nielsen can point to no conduct by the agents that would constitute the types of actions generally considered to be coercive under our case law, such as threats or violence, lengthy marathon interrogations, or extended isolation.  See United States v. Braxton, 112 F.3d 777, 784–85 (4th Cir. 1997) (en banc) (collecting cases).

Nielsen also emphasizes that he suffers from PTSD, had taken several medications the morning of the interview, and experienced anxiety during the interaction with the agents.  A suspect's mental condition, whether due to mental illness or medication, is not, standing alone, sufficient to render that suspect's statements involuntary.  Cristobal, 293 F.3d at 141 (citing Colorado v. Connelly, 479 U.S. 157, 164–65 (1986)).  And even when taken together with the other circumstances of the interview, Nielsen's mental condition does not lead to the conclusion that his "will [was] overborne or his capacity for

13

self-determination critically impaired" during the interrogation.  Id. at 140 (citation omitted).  Accordingly, we hold that the district court did not err in concluding that the circumstances surrounding Nielsen's interrogation comported with due process.

### III.

### A.

Nielsen also challenges his convictions as multiplicitous. He argues that Counts 1, 3, 5, and 7 of the indictment, charging aggravated sexual abuse of a minor by force, and Counts 2, 4, 6, and 8, charging sexual abuse of a minor, are multiplicitous because the district court instructed the jury that it could infer force to meet the elements of aggravated sexual abuse of a minor by force if it found that the defendant had disproportionately greater strength than the victim, which, Nielsen contends, will "inevitably" be the case in a child abuse case given the disparity in age between defendant and victim. Br. Appellant 18.  We agree that Nielsen's convictions are multiplicitous, though not for the reasons cited by Nielsen.[2]

---

[2] Because we resolve Nielsen's multiplicity challenge on other grounds, we need not address his argument concerning the force instruction at length.  However, because Nielsen argues that the alleged error in the force instruction entitles him to a new trial rather than the usual remedy of vacating the multiplicitous convictions, we note that the trial judge properly instructed the jury in this regard, see United States (Continued)

14

Among the guarantees provided in the Double Jeopardy Clause is protection against "the imposition of cumulative punishments for the same offense in a single criminal trial." United States v. Shrader, 675 F.3d 300, 313 (4th Cir. 2012) (citation omitted). "The legislature remains free under the Double Jeopardy Clause to define crimes and fix punishments; but once the legislature has acted courts may not impose more than one punishment for the same offense . . . ." Brown v. Ohio, 432 U.S. 161, 165 (1977). An indictment is improperly multiplicitous when it charges a single offense in several counts. United States v. Burns, 990 F.2d 1426, 1438 (4th Cir. 1993) (citation omitted). "[R]eversal is warranted if the defendant actually was convicted on multiplicitous counts and subjected to multiple punishments." Id. (citation omitted).

When a defendant is convicted of violating multiple statutory provisions for a single act or transaction, we employ the analysis set forth in Blockburger v. United States, 284 U.S. 299 (1932), to determine if the convictions offend the Double Jeopardy Clause. Under Blockburger, "the test to be applied to determine whether there are two offenses or only one, is whether

v. Johnson, 492 F.3d 254, 258 (4th Cir. 2007) (collecting cases), and that the government relied on proof of Nielsen's size and strength to establish the force element, not simply B.R.'s age, see J.A. 647.

each provision requires proof of an additional fact which the other does not." United States v. Martin, 523 F.3d 281, 291 (4th Cir. 2008) (quoting Blockburger, 284 U.S. at 304). Because the Blockburger analysis is a "rule of statutory construction," it "should not be controlling where . . . there is a clear indication of contrary legislative intent." United States v. Allen, 13 F.3d 105, 108 (4th Cir. 1993) (omission in original) (quoting Whalen v. United States, 445 U.S. 684, 691 (1980), and Albernaz v. United States, 450 U.S. 333, 340 (1981)).

Under Blockburger, sexual abuse of a minor is a lesser included offense of aggravated sexual abuse of a minor by force. Section 2243(a) proscribes sexual abuse of a minor:

> Whoever, in the special maritime and territorial jurisdiction of the United States . . . knowingly engages in a sexual act with another person who--
> (1) has attained the age of 12 years but has not attained the age of 16 years; and
> (2) is at least four years younger than the person so engaging;
> or attempts to do so, shall be fined under this title, imprisoned not more than 15 years, or both.

Section 2241(a) proscribes aggravated sexual abuse by force or threat:

> Whoever, in the special maritime and territorial jurisdiction of the United States . . . knowingly causes another person to engage in a sexual act--
> (1) by using force against that other person; or
> (2) by threatening or placing that other person in fear that any person will be subjected to death, serious bodily injury, or kidnapping;
> or attempts to do so, shall be fined under this title, imprisoned for any term of years or life, or both.

Section 2241(c) provides for a thirty-year mandatory minimum sentence when the victim of aggravated sexual abuse is a minor, including when the victim "has attained the age of 12 years but has not attained the age of 16 years (and is at least 4 years younger than [the offender])." Because § 2241(c) imposes a mandatory minimum penalty for aggravated sexual abuse by force or threat when the victim is a minor, age of the victim is an element of the offense that must be submitted to the jury. Alleyne v. United States, 133 S.Ct. 2151, 2155 (2013).

As the government concedes, because the only difference between the two offenses is the additional requirement under § 2241(a)(1) that force be proved to establish aggravated sexual abuse, the § 2243(a) offenses are merely lesser included offenses of the greater § 2241(a), (c) offenses. Suppl. Br. Appellee 1. "It has long been understood that separate statutory crimes need not be identical either in constituent elements or in actual proof in order to be the same within the meaning of the constitutional prohibition." Brown, 432 U.S. at 164 (citations omitted). A greater offense and a lesser included offense are the "same" offense for double jeopardy purposes because the lesser included offense "requires no proof beyond that which is required for conviction of the greater [offense]." Id. at 168.

17

The government nonetheless contends that Nielsen's convictions do not offend the Double Jeopardy Clause because Congress intended to authorize separate punishments for sexual abuse of a minor and aggravated sexual abuse of a minor by force. However, it can point to nothing in the legislative history of either statute evincing "a clear indication of contrary legislative intent" to impose multiple punishments for the same offense. Allen, 13 F.3d at 108 (quoting Albernaz, 450 U.S. at 340). And the cases on which the government relies were decided based on a Blockburger analysis of the two statutes prior to the Supreme Court's decision in Alleyne and are therefore inapposite. See United States v. Rivera, 43 F.3d 1291, 1297 (9th Cir. 1995); United States v. Amos, 952 F.2d 992, 994 (8th Cir. 1991), abrogated on other grounds, United States v. Allery, 175 F.3d 610 (8th Cir. 1999); United States v. Morsette, 858 F. Supp. 2d 1049, 1052–53 (D.N.D. 2012). We therefore see no reason to deviate from the result of the Blockburger analysis here.

Accordingly, we conclude that the district court should have merged the offenses so that Nielsen would have only been convicted of, and sentenced for, the greater § 2241(a), (c) offense in connection with each of the four charged instances of abuse. See United States v. Jones, 204 F.3d 541, 544 (4th Cir. 2000) (citing Brown, 432 U.S. at 169) (holding that district

18

court erred in imposing separate sentence for lesser included offense).  In failing to do so, the district court erred.

B.

Nielsen, however, failed to preserve this issue for appeal. While Nielsen argues that the multiplicity error was not apparent until the district court charged the jury with the allegedly erroneous force instruction, the multiplicity error we identify above was apparent on the face of the indictment, yet was never raised before the district court.  Pursuant to the version of Rule 12 in effect at the time of Nielsen's trial, Nielsen's challenge to the indictment is waived because he did not raise it in a pretrial motion, although "relief from the waiver" may be granted "[f]or good cause."  Fed. R. Crim. P. 12(b)(3)(B), (e) (2011).  Under the circumstances of this case, where the error is so obvious that the government now concedes that § 2243(a) is a lesser included offense of § 2241(a), (c) under Blockburger and Nielsen attempted to raise a multiplicity challenge during trial, we exercise our discretion to relieve Nielsen of his waiver under Rule 12 and review the multiplicity error discussed above under plain error review.  See United States v. Bennafield, 287 F.3d 320, 322 (4th Cir. 2002) (citing United States v. Olano, 507 U.S. 725, 731–32 (1993)).

Under plain error review, a defendant must demonstrate that "an error occurred, that the error was plain, and that the error

19

affected his substantial rights." Id. (citing Olano, 507 U.S. at 732). An error is plain if it is "clear" or "obvious," Olano, 507 U.S. at 734, and it affects substantial rights if it prejudices the defendant, Bennafield, 287 F.3d at 322 (citing United States v. Hastings, 134 F.3d 235, 240 (4th Cir. 1998)). Correction of the error is at our discretion, which we exercise only when the error "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." Olano, 507 U.S. at 736 (citation omitted).

Nielsen's multiplicitous convictions satisfy these requirements. That the § 2243(a) and § 2241(a), (c) counts shared all elements besides force is clear and obvious from the face of the indictment and from the district court's instructions to the jury. The multiplicity error resulted in Nielsen's conviction and sentencing on eight counts instead of four, including eight concurrent terms of imprisonment (and supervised release) and special assessment fees on eight convictions instead of four, and was therefore prejudicial to him. See United States v. Shorter, 328 F.3d 167, 173 (4th Cir. 2003) (discussing how even concurrent sentences on duplicative convictions are improper); United States v. Leftenant, 341 F.3d 338, 348 (4th Cir. 2003) (vacating all but one of multiplicitous sentences and special assessments). And finally, because the error "seriously affect[s] the fairness, integrity or public

20

reputation of judicial proceedings," Olano, 507 U.S. at 736 (citation omitted), we should exercise our discretion to correct it. When "a federal court exceeds its own authority by imposing multiple punishments not authorized by Congress, it violates not only the specific guarantee against double jeopardy, but also the constitutional principle of separation of powers in a manner that trenches particularly harshly on individual liberty." Whalen, 445 U.S. at 689. The imposition of multiplicitous convictions and sentences in this case was therefore plain error.

### C.

Having concluded that Nielsen's convictions are multiplicitous and that the error was plain and is appropriate for us to correct, we turn to the remedy. The usual remedy for multiplicitous convictions is to vacate the offending convictions and order a resentencing of the defendant accordingly. See United States v. Brown, 701 F.3d 120, 127–28 (4th Cir. 2012) (citing Ball v. United States, 470 U.S. 856, 865 (1985)). Nielsen nonetheless argues that the multiplicity error entitles him to a new trial because the jury "was prejudiced by the Government's 'prolix pleading' with regard to multiplicitous charges implicating the same exact elements of proof." Suppl. Br. Appellant 7. We rejected a similar argument in United States v. Colton, 231 F.3d 890 (4th Cir. 2000), and do so again

21

here. Because the same evidence was used to prove the § 2241(a), (c) offenses as the lesser § 2243(a) offenses, Nielsen has suffered no cognizable prejudice from the jury's consideration of the multiplicitous counts. See Colton, 231 F.3d at 910.

IV.

For the reasons set forth above, the district court's denial of the motion to suppress is affirmed. Nielsen's convictions and sentences on Counts 2, 4, 6, and 8 for sexual abuse of a minor under § 2243(a) are vacated, and the case is remanded for entry of an order dismissing Counts 2, 4, 6, and 8 of the indictment and issuance of an amended judgment consistent with this opinion.

AFFIRMED IN PART,
VACATED IN PART, AND
REMANDED WITH INSTRUCTIONS